IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIE PETERSEN, Special Administrator, of the Estates of Jane Ann McGrath, deceased, and Molly Morgan, deceased; JON PETERSEN, as father and next friend of Katie Petersen, a minor; and STEVEN M. WALTERS and GAYLA J. WALTERS<br><br>Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY, a Corporation<br><br>Defendants. | Case No. 04 C 5918<br>Consolidated with 04 C 5949,<br>04 C 6032 and 05 C 6263<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring this action for damages caused when the motor vehicle in which they were traveling collided with a Union Pacific train. The collision occurred in Carlinville, Macoupin County, Illinois, at the Cisco Road railroad grade crossing. The collision resulted in the deaths of Jane Ann McGrath and Molly Morgan and serious injuries to the other occupants of the automobile. Plaintiffs originally filed their suits separately in the Circuit Court of Cook County, Illinois. Defendant Union Pacific Railroad Company ("Defendant" or "Union Pacific") removed these cases to the United States District Court for the Northern District of Illinois and the actions were consolidated. Union Pacific now moves this Court, pursuant to 28 U.S.C. § 1404(a), to transfer the consolidated cases to the United States District Court for the Central District of Illinois, Springfield Division – the district where the collision occurred. For the convenience of the parties and witnesses and in the interest of justice, this Court grants Union Pacific's Motion to Transfer Venue.

## DISCUSSION

Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." The parties agree that this action may have been brought in the Central District of Illinois. Thus, the question before the Court is whether transferring this case would increase the convenience of the parties and witnesses and advance the interests of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

The factors this Court will consider in determining whether the action should be transferred for the convenience of the parties and witnesses and in the interest of justice include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508; *see Coffey*, 796 F.2d at 219 n.3 (stating that the three statutory factors are placeholders for larger considerations). This Court is vested with a great deal of discretion in weighing these factors and the decision to transfer must be made on a case-by-case basis. *Coffey*, 796 F.2d at 219.

The parties debate the amount of deference to be afforded Plaintiffs' choice of forum. Only point should be certain, the party seeking transfer bears the burden of proving that the alternate forum is more convenient and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum is rarely disturbed." *In re National Presto Industries, Inc.*, 347 F.3d 662, 664-65 (7th Cir. 2003) (most recent case commenting on consideration given to plaintiff's choice of forum

under § 1404(a)), quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 837 (1947). Yet, even this certain point is tempered with caution, "[r]arely, however, is not never." *Id.* at 665.

The district court here has fueled the debate through its varying statements regarding deference to a plaintiff's choice of forum. Compare the two most recent cases from this Court: *Fidelity & Deposit Co. of Maryland v. Advance Indus. Const., LLC*, 2006 WL 752943, *2 (N.D. Ill. Mar. 21, 2006) ("In considering whether to transfer an action, the court should afford some consideration to the plaintiff's choice of forum") with *Hyman v. Hill & Associates*, 2006 WL 328260, *2 (N.D. Ill. Feb. 9, 2006) ("A plaintiff's choice of forum is generally given substantial weight under § 1404(a)"). Two factors often affecting the level of deference afforded a plaintiff's choice of forum are: (1) whether he filed in his home forum, and (2) whether the conduct giving rise to plaintiff's cause of action occurred in the forum. *See, e.g., Bankers Life and Cas. Co. v.* Case, 2005 WL 3542523, *2 (N.D. Ill. Dec. 23, 2005).

The debate over the level of deference to apply to a plaintiffs' choice of forum is largely superfluous, however. The plaintiff's home forum and the location of the conduct giving rise to the cause of action are subsumed in the § 1404(a) factors relevant to transfer. Whether the plaintiff filed in his home forum, for example, will be calculated into the convenience of the parties and witnesses as well as create a relationship between the forum and the cause of action. In the same way, the location of the conduct giving rise to the cause of action necessarily will bear on the sources of proof, the applicable law, the location of witnesses and the relationship of the forum to the cause of action. Thus, while this Court affords Plaintiffs' choice of forum deference in that the case will not be transferred "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum is rarely disturbed," the relevance of Plaintiffs' home forum and whether the occurrence giving rise

3

to the cause of action took place in Plaintiffs' chosen forum are better considered in the context of the § 1404(a) factors themselves, rather than through an esoteric level of deference.

I.   **Convenience of the Parties**

Five of the seven plaintiffs – Marie Petersen, Jon Petersen, Katie Petersen as well as the decedents Jane McGrath and Molly Morgan – reside in the Northern District of Illinois. The other two plaintiffs, Steven and Gayla Walters, reside in Carlinville, which is located in the Central District of Illinois. Defendant Union Pacific is a national company incorporated in Delaware, with its principal place of business in Omaha, Nebraska. The attorneys for both parties are located in Chicago. Thus, regardless of which court this case proceeds in, the attorneys will be forced to travel to central Illinois to conduct discovery. Given that most of the Plaintiffs, their attorneys and Defendant's attorneys reside in the Northern District of Illinois, the convenience of the parties does not weigh in favor of transfer.

II.  **Convenience of the Witnesses**

Courts generally assume that a party or its employees will testify voluntarily at trial. *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993) (noting that corporate employees have sufficient motivation to testify). On the other hand, issues related to non-party witnesses implicate aspects of each of the § 1404(a) factors. The cost of obtaining attendance of willing witnesses involves the convenience of the parties; the need for such witnesses to travel to the courthouse to testify relates to the convenience of the witnesses; and finally, the availability of compulsory process for attendance of unwilling witnesses speaks to the interest in justice.

In this case, the majority of non-party witnesses reside in the Carlinville area and elsewhere in the Central District of Illinois. The federal courthouse in Chicago is located approximately 230

miles from the scene of the collision in Carlinville, Illinois, while the courthouse in Springfield is about 46 miles away. Because Rule 45 of the Federal Rules of Civil Procedure allows the parties to conduct their discovery and depositions of non-party witnesses throughout the country, *see Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd.*, 776 F. Supp. 1271, 1276 (N.D. Ill. 1991), the Court's concern is that important non-party witnesses may be available to testify at trial due to cost or inconvenience, thereby resulting in trial by deposition. *See Bally Mfg. Corp. v. Kane*, 698 F. Supp. 734, 738 (N.D. Ill. 1998).

Union Pacific has attached to its Motion to Transfer witness statements and affidavits, notes taken from witness interviews, and various reports from state and local agencies regarding the collision. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293-94 (7th Cir. 1989) (suggesting moving party should supply "affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of their testimony"). In these materials, Union Pacific identifies more than 20 individuals located in the vicinity of the collision that were either present at the time of the collision or arrived shortly after the occurrence; as well as a dozen or so non-party witnesses familiar with the operation of the Cisco Road railway crossing. *See Moore v. AT & T Latin America Corp.*, 177 F. Supp. 785, 590 (N.D. Ill. 2001) (holding that testimony must be identified with more than vague generalizations). While many of these individuals are Union Pacific employees, a significant number of them are not. Union Pacific also points to Plaintiffs' interrogatory answers, wherein Plaintiffs identify ten physicians in Springfield and the nearby area that administered treatment to Plaintiffs following the collision. Comparatively few witnesses are located nearer the federal courthouse in Chicago. These witnesses would include three of the Plaintiffs, friends and family members of

Plaintiffs and Plaintiffs' treating physicians. While this Court is not willing merely to shift the inconvenience from Defendant to Plaintiffs, the convenience of these non-party witnesses and their potential unavailability is a significant factor weighing in favor of transfer. *See Dairy Indus. Supply Ass'n v. LaBuy*, 207 F.2d 554, 558 (7th Cir. 1953) (holding that transfer must increase convenience not merely shift the inconvenience to the plaintiffs or their witnesses).

In reaching this conclusion, the Court is not only considering the quantity of witnesses in each forum, but also the nature of their testimony. *See FUL Inc.*, 839 F. Supp. at 1311; *Bally Mfg. Corp.*, 698 F. Supp. at 738. All of the occurrence witnesses, including two of the seven Plaintiffs, state and local investigative personnel, and other individuals familiar with the operation of the Cisco Road crossing are located in central Illinois. The issuance of subpoenas for the depositions of these non-parties must be done through the District Court for the Central District of Illinois regardless of whether the case is transferred. *See* Fed. R. Civ. P. 45(a)(2); (c)(3)(A)(ii). And although this Court could compel the attendance of these non-party witnesses at trial, it will be more convenient for them, and involve less cost for the parties, for them to testify in Springfield than in Chicago. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) ("[A] person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held"); *Sky Valley*, 776 F. Supp. at 1277 ("[C]ourts will first look to see whether the non-party witnesses reside within the subpoena power of either the transferor or transferee court"). Unless other considerations made in the interest of justice counsel otherwise, this case should be transferred to prevent unnecessary costs to the parties and inconvenience to the non-party witnesses. *See Coffey*, 796 F.2d at 220 ("The 'interest of justice' is a separate component of a § 1404(a) transfer analysis and may be determinative in a particular

case, even if the convenience of the parties and witnesses might call for a different result.") (internal citations omitted).

### III. In the Interest of Justice

The interest of justice component focuses on the efficient and fair administration of the courts more than on the interests of the litigants themselves. *See Coffey*, 796 F.2d at 220-21. Relevant to this component is the relative speed with which the case will get to trial, having a judge familiar with the applicable law try the case, the relationship of the parties and claims to the forum and access to sources of proof including the possibility of viewing the premises. *See Heller*, 883 F.2d at 1293; *Zalutsky, Pinski & DiGiacomo, Ltd. v. Kleinman*, 747 F. Supp. 457, 462-63 (N.D. Ill. 1990). All of these factors are either break even or point towards transferring this matter to the Central District of Illinois.

First, Plaintiffs' claims are brought under Illinois law. Both this Court and the proposed transferee court are located in Illinois and regularly apply Illinois law in diversity actions. Next, there is no substantial difference in the efficiencies of the two courts. According to Federal Judicial Caseload statistics compiled by the Administrative Office of the U.S. District Court, during the 12-month period ending March 31, 2005, the median time from case filing to trial in the Northern District is 24 months; in the Central District it is 26 months. Thus, neither of these first two factors support the transfer of the case to the Central District of Illinois.

Regarding the allocation of judicial resources, the residents of the Central District of Illinois have a greater interest in resolving this controversy than the people of the Northern District of Illinois. *See Coffey*, 796 F.2d at 221 n.4 (stating that the court should consider the relative interest of residents in a each district). While five of the seven individuals involved in the instant collision

7

were from Chicago, the safety of the Cisco Road railroad crossing will be of greater concern to the residents in the vicinity of the accident than those living in Chicago. *See Dunn v. Soo Line Railroad Company*, 864 F. Supp. 64, 66-67 (N.D. Ill. 1994) (holding that residents of forum where accident occurred had greater interest than forum where plaintiff resided).

Finally, because the collision between Plaintiffs' vehicle and the Union Pacific train occurred in Carlinville, Illinois, most, if not all, of the proof necessary for this case is located in the vicinity of Carlinville in the Central District of Illinois. Although not likely, this proof could include an in-person view of the premises by the jury. The in the interest of justice component reinforces this Court's judgment that this matter should be transferred to the Central District of Illinois.

## Conclusion and Order

The evidence available, including discovery conduct to date, demonstrates that the majority of proof, in terms of quantity and quality, is located in the Central District of Illinois. Of particular import, the affidavits and other submissions by Union Pacific demonstrate that the majority of non-party witnesses are located in the vicinity of Carlinville or Springfield, in the Central District. After carefully reviewing and weighing all of the evidence in light of the § 1404(a) factors, the Court in its discretion finds that the balance is strongly in favor of transfer. Accordingly, for the convenience of the parties and the witnesses and in the interest of justice, Union Pacific's Motion to Transfer Venue is granted and this consolidated action is ordered transferred to the Central District of Illinois for all further proceedings.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: April 19, 2006